On remand, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and an employment relationship existed between the parties on March 3, 1992.
2. Defendant was a duly qualified self-insured, with Alexsis, Inc., as the servicing agent.
3. Plaintiff sustained an injury by accident arising out of and in the course of his employment on March 3, 1992. As a result of the compensable injury, plaintiff received temporary total disability compensation from March 17, 1992 to April 12, 1992, and from May 29, 1992 to July 12, 1992.
4. Plaintiff's average weekly wage was $339.20, which yields a weekly compensation rate of $226.14.
5. Plaintiff was rated as retaining a five percent permanent partial impairment to her back, for which the parties entered into a Form 26, which was approved on September 24, 1993.
6. The issue for determination is whether plaintiff has sustained a substantial change of condition since October 15, 1993, which was the last payment of compensation; and if so, to what additional benefits may she be entitled.
7. The parties stipulated the medical reports of Dr. Maher Habashi, Dr. H. Grey Winfield, Dr. A. Gregory Rosenfeld, and Bruce Hilton, D.C. into evidence.
 ***********
The Full Commission makes findings of fact as follows:
 FINDINGS OF FACT
1. At the time of the injury giving rise to this claim, plaintiff was a forty-eight year old female who had been employed with defendant for six years.
2. Before the injury by accident, the employee did not have any significant back or pain conditions.
3. Following the admittedly compensable injury, plaintiff was initially referred to Dr. Robert Hart, a family practitioner who served as defendant's doctor. Dr. Hart ordered therapy for her complaints of mid-back pain, which did not provide relief to plaintiff's symptoms; and on March 31, 1992, Dr. Hart referred plaintiff to orthopedist Dr. H. Grey Winfield, III. Dr. Winfield's examination found plaintiff to have a full range of motion in the lower extremity, to be a bit histrionic in her heel-toe walk, and to exhibit some symptom magnification. Plaintiff continued to treat with Dr. Winfield through May 21, 1992; and thereafter, plaintiff did not return for the follow-up assessment.
4. On August 2, 1995, plaintiff returned to Dr. Winfield, at which time she complained of neck and bilateral arm pain. She also complained of swelling in the hands, and back pain from the neck through the lumbar area, and radiating into both legs. Dr. Winfield's physical examination found plaintiff to be neurologically intact with a full range of motion for the hips, knees and ankles. Diagnostic testing, EMG, NCV, pelvic CT, lumbar myelogram and post-myelogram CT scan and hip-x-rays were all reported as normal. Dr. Winfield found that plaintiff's restriction of neck movement was not due to an anatomical basis.
5. Dr. Winfield testified that as of the one-time visit on August 2, 1995, the employee's condition was much worse than when he had last seen her on May 21, 1992. Dr. Winfield's opinion was that complaints which plaintiff currently voices are not causally related to the prior compensable injury. The Full Commission gives no weight to this opinion inasmuch as Dr. Winfield has no expertise concerning fibromyalgia.
6. On her own, plaintiff began treatment with Bruce Hilton, D.C. on November 9, 1992; thereafter, on July 20, 1993, she was rated as retaining a five percent permanent partial impairment to her back. At the time of the rating, she complained of back and right hip pain, with tingling into the right leg. Defendants had approved original treatment by Dr. Hilton.
7. The employee's back and right hip pain never went away after initial treatment by the various doctors and the pain gradually increased.
8. Plaintiff returned for chiropractic treatment for a popping right hip on August 20, 1994; and Dr. Hilton testified that her condition appeared to be the same as before, but had substantially worsened.
9. Plaintiff was terminated from her job on October 19, 1994 by Karen Hightower, the supervisor, at Hickory Business Furniture, after the employee could no longer physically perform the job.
10. Plaintiff received twenty-four weeks of unemployment compensation at the rate of $177.00 per week.
11. On June 19, 1995, plaintiff began seeing Dr. Dennis Payne, a rheumatologist who has expertise concerning fibromyalgia. Dr. Payne diagnosed plaintiff as having reactive fibromyalgia resulting from her injury by accident of March 3, 1992. The Full Commission finds that plaintiff's initial condition caused by her compensable injury changed for the worse since October 15, 1993, resulting in fibromyalgia. The Commission further finds that such fibromyalgia was the direct and proximate result of the compensable injury.
12. After March 3, 1992, and prior to June 19, 1995, pain spread to other parts of plaintiff's body. She had pain in not only her legs and her low back, but she also had pain in her upper extremities as well, things that were not initially injured on March 3, 1992. This change in pain made her unable to do household chores and some other minor duties around her house. And she was also quite fatigued, had difficulty with sleeping, with pain at night not only in her back but in her upper and lower extremities.
13. Upon examination, Dr. Payne found that plaintiff's lumbar area, or low back, was quite tender, particularly the paraspinal region or the muscles in her spine, around her spine. And he found that he could not reproduce anything when he moved her spine or extremities to suggest that she had a neurological lesion, any problem with her spinal cord or a herniated disk or anything such as that. He primarily found muscle tenderness, which was present not just in those areas, although that seemed to be the worst. She also had some tenderness in some other muscles especially up around her shoulder and her upper extremities, and it fit a pattern that suggested fibromyalgia.
14. Fibromyalgia is a clinical diagnosis. That means that physicians with expertise in fibromyalgia diagnose it based on history and examination rather than doing any type of testing or x-ray studies. It usually produces soft tissue pain and tenderness. And the tenderness is in very characteristic locations in a person's body. It is usually symmetrical and it does not produce any objective abnormalities, other than the tenderness that is present when the physician puts pressure upon these points in the muscles. Occasionally, the physician can detect tightness in the muscle and persons with the problem will describe such muscle tightness.
15. Tender points are used in the diagnosis of fibromyalgia. Plaintiff had those tender points in characteristic locations for diagnosing fibromyalgia. She fulfilled the American College of Rheumatology criteria for fibromyalgia.
16. Fibromyalgia is a chronic muscular pain syndrome that is associated with a non-restorative sleep pattern. People with it tend to say they sleep poorly because of the pain which is present both day and night. They awaken fatigued and they have difficulty maintaining their life, particularly if they do strenuous types of occupations, because of the pain and the fatigue. It is not a destructive process. It does not result in the person having muscle atrophy or becoming objectively weak and it does not deform the joints or the muscles. It does tend to be a very chronic problem, however, and is incurable as far as medical experts know. It is also fair to say it is a very controversial subject in medicine primarily because there is difficulty in objectively studying it.
17. Reactive fibromyalgia is fibromyalgia that is related to a specific event. Here, the event was the injury by accident of March 3, 1992. There are many different types of fibromyalgia. Events that seem to "set off" fibromyalgia, will disturb the person's sleep pattern. And that may be the relationship with reactive fibromyalgia, some problem that whether it be an accident, injury, a severe illness will disrupt the person's sleep pattern. And then they will go on to develop these points of tenderness in their muscles and eventually meet the criteria for fibromyalgia.
18. Defendants' counsel's cross-examination of Dr. Payne did not result in a change of his opinion that plaintiff had disabling fibromyalgia caused or aggravated by her March 3, 1992, injury by accident. Nothing elicited by such cross examination causes the Full Commission to modify its finding of facts.
19. The Full Commission finds the testimony about fibromyalgia and its causes by Dr. Payne, whose specialty includes treatment of reactive fibromyalgia and who has extensive experience with fibromyalgia, is entitled to greater weight than the testimony of Dr. Winfield, who is an orthopaedic surgeon with a general practice. The employee's reactive fibromyalgia was caused or substantially aggravated by her original injury by accident. The employee's condition substantially worsened and she became unable to work on October 19, 1994 because of the fibromyalgia. She continued to be unable to work because of the compensable fibromyalgia up to and including the date of the hearing before the Deputy Commissioner. Such condition is likely to be permanent. Because of her age, experience, education and other factors, plaintiff is unable to earn wages she was earning at the time of her compensable accident and is likely unable to earn any wages in the future.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has sustained a substantial change of condition, within the meaning of N.C. Gen. Stat. § 97-47, as a result of which she is entitled to permanent and total disability compensation from October 20, 1994 to the present and continuing. N.C. Gen. Stat. § 97-29.
2. Defendant is entitled to a credit for the twenty-four weeks of unemployment compensation which plaintiff received. N.C. Gen. Stat. § 97-42.1.
3. Plaintiff is entitled to have defendant pay medical expenses incurred, or to be incurred, by reason of her injuries and resulting fibromyalgia, including treatment by Dr. Payne and Bruce Hilton, D.C. N.C. Gen. Stat. § 97-25.
4. Plaintiff's medical testimony does not have to arise to a medical certainty. Plaintiff has met her burden of proof when her physicians testify that the cause "could or might" have likely produced the effect.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay total and permanent disability compensation to plaintiff at the rate of $226.14 per week from October 20, 1994 and continuing until further orders of the Commission, subject to a credit for unemployment compensation. As much of said compensation as has accrued shall be paid to plaintiff in a lump sum.
2. A reasonable attorney's fee of twenty-five percent of compensation awarded in paragraph 1 herein is approved to be deducted from sums due plaintiff and shall be paid directly to counsel. Thereafter, every fourth check shall be paid directly to counsel.
3. Defendant shall pay medical expenses incurred or to be incurred reasonably related to the compensable injuries and resulting fibromyalgia.
4. Defendant shall pay the costs, including an expert witness fees of $290.00 to H. Grey Winfield, III, M.D.; $320.00 to D. Dennis Payne, M.D.; and $100.00 to Bruce A. Hilton, D.C.
5. Defendant shall pay an attorney's fee of $1,000.00 for plaintiff's counsel work on the appeal to the Court of Appeals, which shall be taxed as costs.
This 22nd day of December 1998.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/ _____________ DIANNE C. SELLERS COMMISSIONER